leged was without consideration and against public policy. The plaintiff appeals from this judgment, and we are of the opinion that the same should be reversed.

Section 172 of chapter 20 of the Laws of 1900, as amended by section 2 of chapter 206 of the Laws of 1906, provided that protectors should "receive six hundred dollars a year and an allowance for expenses not exceeding four hundred and fifty dollars a year," and that "each of said protectors shall receive one-half of the fines and penalties less the expenses of recovering the sum collected in actions brought upon information furnished by him." It was clearly the policy of the statute to provide for the efficiency of the service by making a part of the compensation contingent upon the recovery of fines and penalties, and each protector had a right to the benefits which grew out of his own activities in discovering violations of the game law. The plaintiff, so far as the evidence goes, had at least a fairly good case to be presented for fines and penalties. He had a right to prosecute the same on getting permission from the forest, fish, and game commission. The defendant persuaded him to forego this right, and to join with the defendant in the prosecution of the larger claim, upon an agreement to divide the money which might be recovered; and we are persuaded that this forbearance on the part of the plaintiff, for the benefit of the defendant, constituted a good and lawful consideration for the contract, and that the learned court below erred in dismissing the complaint. This is not a case where the plaintiff was called upon in the discharge of his duties to furnish the evidence for the defendant. The policy of the law gave to each protector the right to look up the evidence and to furnish the same for the purpose of collecting fines and penalties, and it gave to each one one-half of the sum collected for such fines and penalties above the costs of the proceeding to collect the same; and if the plaintiff saw fit to waive his right to bring an action to recover the penalties upon 12 birds, that he might be permitted to share in the reward for a successful prosecution for 53 birds, including the 12 of which he already had evidence, we know of no considerations of public policy which have been violated, and we think, as we have already said, that there was a good consideration for the contract.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.

FLYNN v. NEW YORK, W. & B. RY. CO.

(Supreme Court, Appellate Division, Second Department. June 17, 1910.)

1. COVENANTS (§ 1*)—USE OF LAND—VALIDITY.

Covenants in a deed restricting the use of the property to dwelling houses of a certain class, and prohibiting any trade or business structure, etc., are not void as against public policy.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 1; Dec. Dig. § 1.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. EMINENT DOMAIN (§ 45*)—EXTINGUISHMENT OF RIGHTS.

A railroad company, in obtaining property under eminent domain, may extinguish all outstanding rights therein, provided due compensation is made therefor.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 94; Dec. Dig. § 45.*]

3. RAILROADS (§ 69*)—PROPERTY PURCHASED BY—COVENANTS RUNNING WITH.

Property purchased by a railroad company is held subject to the covenants running with it, and to all equitable rights of which it has actual or constructive notice.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 163; Dec. Dig. § 69.*]

4. INJUNCTION (§ 189*)—RELIEF GRANTED—ALTERNATIVE RELIEF.

A court of equity may grant an injunction or apply some other appropriate relief, as the matter is in the discretion and conscience of the court.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 409; Dec. Dig. § 189.*]

5. EMINENT DOMAIN (§ 273*)—INJUNCTION—DENIAL—CONDITIONS.

The court may attach to its refusal to grant an injunction, restraining a railroad from laying its track across certain property, a condition of making compensation for actual damages.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 762; Dec. Dig. § 273.*]

Appeal from Special Term, Westchester County.

Suit by Michael W. Flynn against the New York, Westchester & Boston Railway Company. From an interlocutory judgment overruling a demurrer to certain defenses, plaintiff appeals. Reversed, with leave to the defendant to file an amended answer.

See, also, 135 App. Div. 743, 119 N. Y. Supp. 858.

Argued before HIRSCHBERG, P. J., and THOMAS, WOODWARD, RICH, and CARR, JJ.

Edwin L. Kalish (Harrison J. Conant, on the brief), for appellant. Allen Wardwell, for respondent.

CARR, J. The plaintiff is the owner of some real property at New Rochelle in Westchester county, which at one time was part of a tract of land which had been improved and offered for sale in lots by one Prince. Prince sold the lots to purchasers under restrictions as follows:

"And the said party of the second part does covenant and agree that the grant and conveyance as aforesaid shall be subject to the following covenants, conditions and restrictions, which shall be binding upon them, their heirs, executors, legal representatives and grantees of the respective parties. That the said party of the second part shall not build or permit to be built on said premises any house or dwelling of a value less than $4,500, or being less than two and one-half stories in height, or of the style known as 'flatroof.' No part of said premises shall be used for any hospital, insane, inebriate or other asylum, public or private, or cemetery or place of burial. No building or structure for any business purpose whatsoever shall be erected on said premises. No part of any structure erected shall be within fifteen feet of any street or street line upon which the lot or lots abut, except the steps, which may project a reasonable distance beyond the structure. No dwelling shall be erected on any plot less than two lots. No part of any barn, stable or other structure or structures of any kind or description erected upon said premises shall be within sixty feet of the line of the street or avenue on

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

which the lot fronts, or within twenty-five feet of any side street; nor shall there be erected on any part of said lot any slaughterhouse, smithshop, forge, furnace, steam engine, brass foundry, nail, iron or other foundry, or any manufactory of gunpowder, glue, varnish, vitriol, ink, turpentine, or for the tanning, dressing or preparing skins, hides or leather, or any manufactory whatever; or any ale house, brewery, distillery, saloon, liquor store, hotel or inn, or livery stable, or any other obnoxious, dangerous or offensive business or trade, or any building of the character or description known as a tenement house. There shall be no toilet outhouse of any kind or description upon the premises. No closed fence shall be erected on said premises, excepting on the rear line thereof, and that no fence shall be erected on said premises more than four feet high, excepting on the rear line thereof. No poultry shall be kept upon any part of the premises unless such poultry is retained or inclosed in proper runs or inclosures. It being understood and agreed that said covenants and conditions shall run with the land, and shall be enforceable both as covenants and conditions, with the right of re-entry in case of breach thereof."

Among the purchasers was one Alice Harmer, who subsequently conveyed her lots to the defendant, the City & County Contract Company by deed which contained clauses as follows:

"Subject, nevertheless, to covenants against nuisances and restrictions as to buildings and conditions contained in former deeds;" and "subject, also, to the equitable rights of owners of other lots upon said map of Theodore Prince to have enforced the covenants, conditions and restrictions contained in former deeds affecting the premises."

The City & County Contract Company is about to permit the defendant railroad company to construct and maintain a steam railroad over and along the lots purchased from Harmer. The plaintiff asks injunctive relief against such use of the land. The defendant, the railroad company, sets up in its answer several "separate and distinct" defenses, of which two have been demurred to by the plaintiff as insufficient in law; and, the demurrer having been overruled, this appeal is taken.

The "separate and distinct" defenses in question are numbered "Second" and "Fourth." The first in order is in effect that the defendant is a legally organized railroad company with all necessary franchises and consents of local authorities; and has adopted, pursuant to law, a plan of route for the construction of its railroad, and that such plan requires the use of the land in question, and that the public convenience and necessity require the use of said land for railroad purposes. The next defense, in order for the purposes of this appeal, is in effect that the restrictive covenants which the plaintiff seeks to enforce "are wholly void and without effect, being against public policy."

That this last-mentioned defense, numbered "Fourth," is insufficient on its face seems to me so clear as to forbid any possible discussion, beyond the mere observation that restrictions of the character set forth in the complaint have been upheld and enforced in equity between private parties so frequently and so continuously as to render any present citation of authority wholly unnecessary. Is there any difference in rule because the party violating the covenant is a steam railroad company organized for public purposes? The answer to this question brings up the sufficiency of the defense numbered "Second." If this defense had been pleaded as "a partial defense," it would have been good against demurrer. The action being in equity for injunctive relief, it rests upon the discretion and conscience of the court

whether an injunction should be granted or other appropriate relief awarded. Raymond v. Transit Development Co., 65 Misc. Rep. 70, 119 N. Y. Supp. 655; affirmed on opinion below, 134 App. Div. 981. But the defense is not pleaded as "partial," and must be considered as intended as a complete defense. Thompson v. Halbert, 109 N. Y. 329, 16 N. E. 675. That it is not a complete defense seems beyond argument. It is true that a railroad company is a quasi public agency vested with the power of eminent domain, and, for its legitimate purposes, can take whatever land it requires, whether subject to restriction or not, but it cannot take an inch of any one's land without making due compensation to the owner and to those who have legal and equitable rights therein. The state itself cannot do this, much less its creature. The railroad company has not taken this land by eminent domain, and thus extinguished all outstanding rights, but has acquired it by purchase, which renders its ownership subject to all equitable rights of which it has actual or constructive notice. While the court may or may not hinder the use of this land by injunction, it may at the same time attach to its refusal of injunctive relief a condition of making compensation for actual damages. I think no one will question this. It is sought, however, to sustain the judgment of the Special Term on the theory that the restrictions pleaded in the complaint do not in fact relate to the construction of steam railroads on these lots. It is true that nowhere in them does there appear any such words as "steam railroads." But this method of interpretation is, to speak mildly, overliteral. If the language of these restrictions means anything whatever, it means that the land affected shall not be used for any other purpose than the erection of dwelling houses not to cost less than $4,500, nor to be of less than two and a half stories in height, nor to have a "flat roof," permitting, however, the erection of barns and other similar structures appurtenant to dwellings. The contention that the turning of this land into a roadbed for a steam railroad is not within the prohibitive purpose of these restrictions is wholly untenable.

I recommend, therefore, that the interlocutory judgment overruling the demurrer be reversed, with costs, and that the demurrer be sustained, with leave to the defendant to serve an amended answer on payment of $30 costs within 20 days.